Cite as 2022 Ark. App. 247

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. E-21-440

| | |
|---|---|
| LINDA GREEN<br><br>                                    APPELLANT | Opinion Delivered May 25, 2022 |
| V.<br><br>DIRECTOR, ARKANSAS<br>DEPARTMENT OF WORKFORCE<br>SERVICES<br><br>                                    APPELLEE | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2021-BR-01902]<br><br><br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Linda Green appeals the Arkansas Board of Review's (Board's) decision denying her claim for unemployment (UI) benefits. We affirm.

Linda Green began working in the Newport School District (District) as a substitute teacher in January 2019. In this capacity, Green did not have a written contract with the District. Instead, as was the District's general practice, she was placed on the substitute-teacher list and was contacted at the beginning of the school year to confirm her availability. Green worked on an as-needed basis when a vacancy within teaching staff arose.

In March 2020, the District shut down per the Governor's executive orders in response to the COVID-19 pandemic. The students were no longer provided in-person educational services, and Green was no longer needed as a substitute.

On April 24, Green filed an application for UI benefits, claiming that she had been laid off from her employment with the District. Initially, Green's application was approved; however, a few days later the Arkansas Department of Workforce Services (DWS) temporarily interrupted her payment of benefits, requesting more information from Green and the District. In response to the request, Green filled out a form, marking yes in answer to a question regarding whether she had an agreement to work the next school year. Additionally, Green wrote, "I do not have anything in writing but was asked if I will be working next school term."[1] Green's benefits were reinstated on May 8, and she continued filing her weekly unemployment claims.

On November 4, DWS issued a new decision, retroactively disqualifying Green from UI benefits under Arkansas Code Annotated section 11-10-509(a) (Repl. 2012) between May 31 and August 15, the duration of the summer recess.[2] Green timely appealed the decision to the Appeal Tribunal (Tribunal).

At the hearing, Green testified that she did not have a written contract for employment with the District. She explained that her name was on the substitute list, and she was called to work as needed; however, Green stated that when she applied for UI benefits subsequent to the school closure, she was not sure if the schools would reopen and

---

[1]A week earlier, the Newport Elementary School secretary asked Green if she planned to substitute teach when school started, and Green told her that she would be available.

[2]Though school originally scheduled to resume on August 15, reopening was delayed until August 24.

require her services. Green explained that on September 8, after the schools reopened in August, Lisa Haygood, the Newport High School secretary, texted her asking if she would be able to substitute teach that year, and she stated that she would. The Tribunal issued its decision granting Green's claims for benefits. The Tribunal concluded that

> [t]he school district closed on March 13, 2020, as a result of the COVID-19 public health emergency. The claimant was off work from that point on without any notification from the employer concerning whether she would have work or an opportunity to work in the next school year. The claimant was not a contract employee and she did not receive assurances of continued employment when she applied for regular UI benefits. The claimant was asked to return to substitute for the employer in approximately the end of August of 2020. Therefore, the claimant is not viewed as an employee of an educational institution who received assurances of continued employment between successive academic years.

The District appealed to the Board, and the Board reversed the Tribunal, holding that Green was disqualified under Arkansas Code Annotated section 11-10-509. The Board found that

> [t]ypically, all that is required of a substitute to have a reasonable assurance of work in the next school term is to be able to place her name on the substitute list. So long as the school has not informed her that she is being removed from the list or is prohibited from placing her name on the list, she has a reasonable assurance for purposes of the statute. The school is not required to specifically inform each substitute that they are still on the substitute list and that they will be used. Nobody informed the claimant that she was removed from the substitute list or was ineligible to be considered again for the next semester. Thus, she had a reasonable assurance.

The Board acknowledged that the closing of the schools due to the pandemic and the uncertainty surrounding reopening them were "complicating" factors but found that "the Board does not find that this situation overcomes the reasonable assurance that [Green]

3

would work again in the next year or term as a substitute." Green timely appealed the Board's decision.

On appeal Green argues that because she did not have a contract or reasonable assurances of employment in the fall 2020 term, the Board erred in concluding that she should be disqualified from receiving unemployment benefits under Arkansas Code Annotated section 11-10-509.

Our standard of review in unemployment-insurance cases is well settled. We do not conduct de novo reviews in appeals from the Board. *Keener v. Dir.*, 2021 Ark. App. 88, 618 S.W.3d 446. Instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact. *Id.* We accept the Board's findings of fact as conclusive if supported by substantial evidence, which is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence on which the Board might have reached a different decision, our scope of judicial review is limited to a determination of whether the Board could have reasonably reached the decision rendered based on the evidence presented. *Id.* We defer credibility calls to the Board as the finder of fact as well as the weight to be accorded to testimony presented to the Board. *Id.* While our role in these cases is limited, we are not here to merely ratify the decision of the Board. *Id.* Instead, our role is to ensure that the standard of review has been met. *Id.* With these standards in mind, we turn our attention to the evidence before the Board and its findings.

The Board found Green to be ineligible for benefits under Arkansas Code Annotated section 11-10-509. That statute provides that

> (a) With respect to service performed in an instructional, research, or principal administrative capacity as an employee of an educational institution, benefits shall not be paid based on services for any week of unemployment commencing during the period between two (2) successive academic years or terms, during a similar period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract to any individual if:

> (1) The individual performs the services in the first of the academic years or terms; and

> (2) There is a contract or a reasonable assurance that the individual will perform services in any such capacity as an employee of any educational institution in the second of the academic years or terms.

Green contends that this statute was enacted to "prevent subsidized summer vacations for those teachers who are employed during one academic year and who are reasonably assured of resuming their employment the following year." *Leissring v. Dep't of Indus. Lab. & Hum. Rels.*, 340 N.W.2d 533, 539 (Wis. 1983). In contrast, "a teacher who is unemployed at the end of the year and realistically may remain unemployed in the fall, is not seeking benefits simply because he or she wants a subsidized summer vacation." *Id.* Green asserts that she was not reasonably assured of resuming her employment in the new school year. We disagree.

Green worked as a substitute teacher on an as-needed basis during the 2018 to 2019 spring term, and the 2019 to 2020 fall and spring terms and did not work during the 2019 summer recess. In this capacity, she did not have a written agreement with the District. Green explained that she had verbal agreement with the District that she would return as a substitute teacher for the next term. During the 2020 spring term, the District experienced

5

an interruption in the provision of educational services due to COVID-19 and discontinued in-classroom instruction on March 13. As a result, substitute teachers, including Green, were no longer needed after March 12. At the end of May, the District recessed for the summer. In August 2020, the District resumed in-classroom instruction, and Green returned to work as a substitute teacher in September. In essence, Green was out of work from March 13 until August 24 because no work was available due to COVID-19 and due to the normal summer recess during education terms. She had not been fired or laid off but returned to work at the next educational term available. Because Green's name remained on the substitute-teacher list, the Board concluded that Green enjoyed a reasonable assurance of employment between terms and was ineligible for benefits.

Citing *Prosser v. Director*, 4 Ark. App. 344, 631 S.W.2d 24 (1982), Green claims that she was not reasonably assured of employment for the following term. In *Prosser*, the claimant was a schoolteacher who moved out of state and was actively seeking employment there. Our court held that she was entitled to benefits because she did not have a "written, verbal or implied agreement" to teach school the next school year and, thus, did not have reasonable assurance of employment under the statute. *Id.* at 346, 631 S.W.2d at 25.

Here, Green claims that the Board improperly considered her subsequent employment with the District as a reasonable assurance of employment. As such, it erred in finding that an implied agreement existed where the District laid her off two months early and failed to contact her to request that she return to work until approximately two weeks after school resumed.

6

Viewing the facts in the light most favorable to the Board's decision, we conclude that there was sufficient evidence to support the Board's conclusion that Green had reasonable assurance of employment for the next school year. Undisputedly, Green was a substitute teacher for the District and provided services to the District on an as-needed basis. In this capacity, she had been placed on the District's active substitute-teacher list since January 2019 and had remained on that list for the 2020–2021 school year. While placement on this list is not a guarantee that the District would contact Green to fill the teaching vacancies that arose in any given school year, she does not dispute her placement on the list was sufficient for continued employment as a substitute teacher. Thus, her contract with the District amounts to an implied contract for employment as a substitute teacher when her services are needed by the District. Green did not provide services as a substitute teacher from March 12, 2020, until around September 8, after in-person instruction resumed in August; however, Green had not provided services as a substitute during the 2019 summer recess, during which in-person educational instruction was not being provided. COVID-19 did not change the nature of her employment relationship with the District. She was still employed by the District as a substitute teacher on an as-needed basis and remained so into the 2020–2021 school year. Accordingly, the Board did not err in concluding that she had "reasonable assurances" of continued employment under the statute and, therefore, was not entitled to benefits during the summer break.

Affirmed.

HARRISON, C.J., and VAUGHT, J., agree.

7

*Jaden Atkins*, Legal Aid of Arkansas, for appellant.

*Jennifer Janis*, for appellee.